HOME BUILDERS SHIPPING ASSOCIATION, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7044.   Promulgated October 21, 1927.

Patronage dividends allowed as part of cost of goods sold.

*D. B. Welty, Esq.*, for the petitioner.
*Dwight H. Green, Esq.*, for the respondent.

In this proceeding the petitioner seeks a redetermination of its
income and excess-profits-tax liability for the calendar year 1919, for
which the Commissioner in his deficiency letter dated July 13, 1925,
has determined a deficiency in the amount of $365.39. The amount
of tax in controversy, however, is $1,398.47. The error alleged in the
petition is as follows:

In determining the taxpayer's taxable income for the calendar year 1919,
the Commissioner of Internal Revenue has disallowed as a deduction, in com-
puting the gross income, the sum of $4,137.70 which was the amount of the
total liability to the stockholders of the taxpayer on December 31, 1919, as a
patronage dividend based on the number of bushels of wheat sold to the tax-
payer by each member and stockholder thereof during the calendar year
1919.

### FINDINGS OF FACT.

The petitioner was incorporated under the laws of the State of
Oklahoma on March 6, 1916.

Its articles of incorporation provided that the purpose for which
it was formed was " to buy and sell farm products, coal, lumber and
other commodities and do a general shipping business "; that the
place where its principal business was to be transacted was at Aline,
Okla.; that the term for which the corporation was to exist was 20
years; that there were to be five directors or trustees; and that the
amount of the capital stock was to be $5,000 divided into 1,000 shares
of $5 each. On March 15, 1918, an application was filed with the
secretary of state for increasing the authorized capital stock from
$5,000 to $20,000.

The petitioner's constitution and by-laws are as follows:

### CONSTITUTION.

#### Article I.

Sec. 1. The name of this organization shall be The Homebuilders Protective
and Shipping Association of Alfalfa County.

#### Article II.

Sec. 1. The officers of said Association shall be President, Vice President, Sec-
retary-Treasurer and General Manager; there shall be five Directors elected
by the Association. Said Directors shall elect President, Vice President and

Secretary-Treasurer out of their number. The General Manager shall be employed by the Board of Directors and under their control at all times.

Sec. 2. The President shall preside at all meetings of the Association. He shall be authorized to call meetings of the Board of Directors and shall be chairman of said Board.

Sec. 3. The Vice President shall perform the duties of the President in his absence.

Sec. 4. The Secretary-Treasurer shall keep a complete record of all meetings of the Association and of the Board of Directors; he shall receipt for all moneys received from every source; he shall pay out the same upon orders signed by the President and shall perform all other duties required of him by the Board.

Sec. 5. The Directors of this Association shall be elected annually at a general meeting held on the second Monday in January or as soon thereafter as may be convenient and shall hold their office for one year or until their successors are elected and installed, unless removed for cause.

Sec. 6. The General Manager shall keep a correct record of all business done by him and shall make report from time to time as the Board of Directors may require.

Sec. 7. The books and records of this Association shall be open for inspection at all reasonable times by the members of this Association.

Sec. 8. The majority shall rule at all meetings. Any officer may be removed at any time by referendum vote of this Association.

Sec. 9. These By-Laws may be revised or amended at any general meeting of the Association, provided due notice be given at least 30 days prior to meeting, said notice specifying change to be made.

## Article III.

Sec. 1. Membership fees shall be $2.00 with ten cents per month dues, payable in advance annually.

Sec. 2. Any member falling more than three months behind with dues shall be suspended from the benefits of the Association until said dues are paid up one year in advance.

Sec. 3. Every stockholder in good standing shall be entitled to one vote on all questions in all general meetings.

## Article IV.

Sec. 1. The Manager shall give bond equal to twice as large a sum of money as he is liable to handle at any one time.

Sec. 2. The Directors shall decide as to the size of the bond and to the liability of the bondsmen.

### CORPORATION BY-LAWS.

## Article I.

Sec. 1. The object of this corporation shall be to supply the economic needs of the members, to buy, sell or produce any of the products of labor; to buy, sell, build or operate any means necessary to production or distribution. This corporation shall have a common seal for making all acts and proceedings legal.

## Article II.

Sec. 1. None but members of the Homebuilders Protective and Shipping Association shall be permitted to buy or hold any shares in this corporation.

Article III.

Sec. 1. The shares of this corporation shall be of the par value of $5.00 and shall be issued in blocks of five at the first issue; and shall be payable in one sum of $10 cash, the balance to be paid either in cash or by accrued dividends and rebates at the option of the purchaser.

Sec. 2. Any member may transfer their shares but must first offer same to the Board of Directors.

Sec. 3. No member shall receive any cash dividends until all dues have been paid.

Sec. 4. Should any member be expelled for any cause his shares shall be cancelled and his money refunded.

Article IV.

Sec. 1. The capital fund shall consist of the money paid to the corporation for shares and shall be used by the Board of Directors in commercial and industrial undertakings in any manner advised by two-thirds majority of the stockholders present at any stockholders' meeting.

Sec. 2. The surplus funds shall consist of the surplus profits of the corporation not otherwise appropriated and shall be divided annually among the stockholders.

Article V.

Sec. 1. The Board of Directors shall constitute a Board of Audit whose duty it shall be to pass upon all claims against the corporation; inspect the property of the corporation on the first Monday in each quarter and file a report of same with the Secretary.

Article VI.

Sec. 1. This corporation may enter industrial pursuits as soon as its capital will permit and may operate any industry for the benefit of its members.

Sec. 2. The Directors shall meet as often as necessary for the transaction of business but shall not receive more than $2.00 per day for the time necessarily spent in the performance of their duty; except the Secretary, and he shall receive extra pay for all time necessarily spent outside the meetings.

Sec. 3. At meetings of the stockholders each member shall be entitled to one vote only, and only stockholders shall be permitted to vote at stockholders' meetings.

Sec. 4. Stock in this corporation shall be non-assessable.

Sec. 5. No member shall be liable for more than the amount of his or her capital stock.

On March 15, 1920, the petitioner filed with the collector of internal revenue for the district of Oklahoma its income and profits-tax return for the calendar year 1919. Under Schedule A it deducted as a part of the cost of goods sold the amount of $4,137.70, representing an amount which it had determined was due its stockholders on wheat purchased from them during the year in addition to the price paid for the wheat at the time of delivery and referred to as " Patronage dividends." On July 13, 1925, the Commissioner issued a deficiency

letter in which he disallowed the item of $4,137.70 and made the following statement in connection therewith:

Patronage Dividend: The item of $4,137.70, representing amount intended to be paid as a patronage dividend, and upon which you base your protest, has been disallowed as a deduction. The disallowance is based on a decision of the Unit where it has been held that since the so-called patronage dividends were neither declared, accrued or paid, but were included as a part of surplus, which was eventually wiped out by operating losses, they do not constitute an allowable deduction from gross income.

The petitioner kept its books and rendered its return upon the accrual basis of accounting.

During the year 1919 the petitioner purchased from its stockholders and others approximately 100,000 bushels of wheat and of this amount approximately 80,000 bushels were purchased from its own stockholders. It resold during the year all of the wheat purchased with the exception of 8,170 bushels which it carried in its inventory on December 31, 1919.

It had been the consistent practice of the petitioner from the date of incorporation to promise to pay its stockholders a so-called patronage dividend on all wheat which it purchased from them. This dividend would be determined in the following manner. First the stockholder would be paid a certain price for his wheat at the time he delivered it to the petitioner. It was then orally agreed between the stockholder and the petitioner that the petitioner would later pay the stockholder an amount equal to the difference between the price at which the petitioner resold the wheat, and the price originally paid the stockholder at the time of delivery plus the cost to the petitioner of reselling the wheat. Such so-called patronage dividends were actually paid to the stockholders on all 1916 and 1917 purchases but were not paid on the 1918 purchases for the reason that the petitioner did not have the money with which to make the payments.

On June 19, 1919, the board of directors of the petitioner met at the petitioner's office at one o'clock in the afternoon and passed the following resolution:

Moved by Booze, seconded by Geist that there be paid on Paid-up capital stock 10% int. rate per annum, and that the minimum legal rate be retained as a sinking fund; and that balance of earnings if any be prorated to stockholders on wheat. Motion carried.

During the year 1919 the petitioner sold additional capital stock of the par value of $4,745. It was explained to all the prospective stockholders, as an inducement to buy stock, that a patronage dividend prorated on wheat would be paid by the petitioner that year. By reason of promising the farmers a patronage dividend on wheat, the petitioner succeeded in having farmers bring their wheat to its elevator which was a greater distance from their farms than the other elevators where they would have to sell at the market price.

On December 11, 1919, the board of directors of the petitioner met and passed the following resolution:

December 11, 1919. Board of directors met today, Thursday, instead of Tuesday the 9th as usual. Present Goodno, Guice, Booze and Young. Manager's report read and accepted. Moved by Guice that manager's report to annual meeting in January, 1920, shall show the amount of each article of merchandise handled during the year, including wheat, grain, oats, flour, feed, lumber, coal, modoc posts, cement and miscellaneous articles, and also the amount of profit or loss on each. Motion carried.

At the annual stockholders meeting on January 17, 1920, it was moved and carried that the revenues of the association for 1919 be distributed as directed by the board at their December meeting. A full account of the January meeting is as follows:

January 17, 1920, R. S. Goodno in the chair. Manager's report was read showing business of the association in a good healthy condition, net gain thirteen thousand ninety-four dollars and thirty-six cents ($13,094.36). On motion report was accepted. Remarks were offered by H. C. Booze, J. A. Dual, Frank Brown. Resolution by Young after general discussion was lost. Moved by Powers that revenues of association for 1919 distributed as directed by the Board at their December meeting. Motion carried. Moved by H. Guice that in the future we prorate to the stockholders all revenues of the association on all commodities handled by the association, paying interest on stock. Did it carry? I say it did.

We then proceeded to the election of a board of directors. The following were nominated: R. S. Goodno, J. R. Powell, J. Weber, J. G. Young, J. A. Dual, H. Booze, T. J. Buckavan, T. Chenault, H. C. Guice, P. C. Daly, B. Capwright and Robert Held. Nominations closed. Weber, Buckavan and Chenault withdrew. Votes stood as follows: Goodno, 101; Young, 98; Dual, 93; Booze, 57; Guice, 48; Daly, 45; Capwright, 47; Held, 80. Moved by G. A. Dual that there be a committee appointed by the president to revise our by-laws and that the proposed by-laws be printed and mailed to each stockholder by the secretary, and that such notice include a call of a meeting by the president to vote on said by-laws. Held, Young, Dual, Booze and Goodno having a majority of the votes are declared elected members of the Board of directors for the coming year. The officers elected were called to the platform and addressed the meeting.

The following were appointed the committee to formulate the by-laws: H. C. Guice, D. Capwright, J. R. Powell, E. R. Ging, G. W. Grandel and Gross. The meeting adjourned, J. G. Young, Secretary-Treasurer.

In computing the amount of the patronage dividend payable for the year 1919 the cost of the wheat purchased at the time of delivery to the petitioner by the stockholder plus the cost of reselling the wheat, was deducted from the sum of total wheat sales plus the amount of wheat on hand at the close of the year at market price. Under this method the patronage dividend figured 5 cents per bushel. The total amount of the patronage dividend for the year 1919 which was computed under this method amounted to $4,187.70. This latter amount was deducted by the petitioner on its income and profits-tax

return as a part of the cost of goods sold and was disallowed by the Commissioner in his deficiency letter.

In the balance sheet as of the close of the year which was attached to the petitioner's return the amount of $4,137.70 is shown as a liability of the petitioner to the stockholders on wheat sold. This balance sheet is as follows:

*Supporting Schedule K—Balance Sheet January 1, 1920.*

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on hand | $55. 75 | Capital stock | $19, 965. 00 |
| Bills receivable | 39. 23 | Bills of exchange | 21, 098. 76 |
| Open accounts | 4, 977. 41 | Open accounts payable | 5, 598. 00 |
| Merchandise | 17, 552. 00 | Notes payable | 6, 000. 00 |
| Wheat | 29, 115. 44 | Due stockholders on wheat | |
| Real estate and fixtures | 9, 226. 20 | sold | 4, 137. 70 |
| Bank account | 890. 09 | Apparent gain | 5, 056. 66 |
| | 61, 856. 12 | | 61, 856. 12 |

The stockholders had been advised that the patronage dividend computed as stated above would be paid them on the basis of the number of bushels of wheat sold by each to the petitioner during the year 1919. This liability of the petitioner to its stockholders was erroneously omitted from its books when they were closed for the year 1919.

The above item of $4,137.70 has never been paid to the stockholders for the reason that at no time since 1919 has the petitioner had sufficient funds with which to pay it.

OPINION.

GREEN: The question here is whether the petitioner is entitled to deduct as a part of the cost of goods sold the amount of $4,137.70 determined by it in December, 1919, to be due its stockholders on wheat purchased from them during the year in accordance with an oral understanding that there would be paid to such stockholders, in addition to the amount paid them at the time of delivery, an amount equal to the difference between such amount plus the cost of reselling the wheat, and the price at which the wheat was resold. The additional price to be paid amounted to 5 cents per bushel and this multiplied by the approximate 80,000 bushels purchased from the stockholders during 1919 amounted to the $4,137.70 here in question. We know of no reason why the amount of $4,137.70 should not be treated as a part of the cost of wheat purchased. It was intended by all of the parties that it should be so treated. It has not been the practice of the Commissioner to disallow such items in other cases. See *Appeal of Trego County Cooperative Association*, 6 B. T. A. 1275. His reason for disallowing the item in the instant case was because it had not, according to his determination, been declared,

accrued or paid, and was eventually wiped out by operating losses. We have found that the petitioner kept its books upon the accrual basis; that it had agreed with its stockholders to pay this additional amount for the wheat purchased from them; that the payment was authorized by the board of directors during 1919; that the petitioner claimed on its income-tax return as a part of the cost of goods sold the amount determined by it in 1919 to be due the stockholders in accordance with the agreement between them; and that the amount so determined was set up on the balance sheet attached to the return as being due its stockholders. We believe that the amount here in question represented an actual liability on the part of the petitioner to its stockholders for wheat purchased from them during 1919 and should be considered as a part of the cost of goods sold in determining the petitioner's gross income. It is to our minds immaterial that the liability of $4,137.70 has not, as yet, been paid. There was no evidence that the petitioner never intended to pay it.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN and MURDOCK dissent.